HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MASTERS SOFTWARE, INC.,

    Plaintiff,

    v.

DISCOVERY COMMUNICATIONS, INC., et al.,

    Defendants.

CASE NO. C10-405RAJ

ORDER

## I. INTRODUCTION

This matter comes before the court on the motion (Dkt. # 33) of Defendant Bartolo Valastro to dismiss all claims against him both for lack of personal jurisdiction and because the complaint of Plaintiff Masters Software, Inc. ("Masters"), fails to state a claim against him. No party requested oral argument, and the court finds oral argument unnecessary. For the reasons stated below, the court DENIES the motion.

## II. BACKGROUND

The court addressed this case extensively in its July 16 order granting a preliminary injunction against Mr. Valastro and several corporate Defendants. The corporate Defendants (collectively "Discovery") operate cable television networks including The Learning Channel ("TLC"), the network on which the television program *Cake Boss* airs.

ORDER – 1

*Cake Boss* is a "reality" television program concerning the cake baking adventures of Mr. Valastro, a New Jersey resident who owns Carlo's Bakery in Hoboken. Mr. Valastro is the titular Cake Boss, although he apparently goes by "Buddy" on the show.

Masters is a Texas corporation with its sole place of business in Texas. It sells cake bakery management software nationwide under the trademark "CakeBoss," and undisputedly began doing so before anyone conceived the *Cake Boss* television program. Most of Masters' claims center on *Cake Boss*'s alleged infringement of its trademark. The merits of those claims were the subject of the preliminary injunction order. Masters also asserts a claim for tortious interference with contract based on allegations that Mr. Valastro tried to convince a supplier to stop selling CakeBoss-branded bakeware for Masters.

This order primarily concerns whether Mr. Valastro is subject to personal jurisdiction in this court. Although Mr. Valastro's appearances on *Cake Boss* are important to this analysis, this order focuses on Mr. Valastro's conduct that is not captured on camera. While Mr. Valastro appears on *Cake Boss* on the televisions of thousands (perhaps even millions) of Washington residents, Mr. Valastro has never been to Washington. That will change soon, when he visits Seattle in November 2010 to appear at the Moore Theater as part of the "Bakin' With the Boss Tour" (the "Tour"), a nationwide series of promotional appearances. The website at www.buddyontour.com (the "Tour Website") promotes the Tour, and permits customers to buy tickets, including tickets to the Seattle show. Masters Decl. (Dkt. # 36), Exs. E & F. The Tour Website prominently links the Tour and Mr. Valastro's starring role in *Cake Boss*, including a prominent graphic stating "As Seen on *Cake Boss*," along with the TLC logo. *Id.* Among other things, the Tour Website (and presumably the Tour itself) promote the upcoming release of Mr. Valastro's book: "Cake Boss: The Stories and Recipes from Mia Famiglia."

ORDER – 2

Evidence regarding the Tour and the Tour Website comes entirely from Masters. Mr. Valastro offered no evidence as to either. In his reply brief, he notes that the copyright notice affixed to the www.buddyontour.com website is attributed to "Mills Entertainment." Masters Decl., Ex. D. Mills Entertainment is also named as the Tour's producer. *Id.* Mr. Valastro does not, however, deny that the Tour is produced and promoted subject to his direction.

### III.  ANALYSIS

In a case like this one, where no federal statute governs personal jurisdiction,[1] the court begins its personal jurisdiction analysis with the "long-arm" statute of the state in which the court sits. *Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*, 284 F.3d 1114, 1123 (9th Cir. 2002). Washington's long-arm statute (RCW § 4.28.185) extends the court's personal jurisdiction to the broadest reach that the United States Constitution permits. *Shute v. Carnival Cruise Lines*, 783 P.2d 78, 82 (Wash. 1989).

There are two species of personal jurisdiction: specific and general. *Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000); *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 & n.8 & n.9 (1984). Both species depend on the defendant's contacts with the forum state. "[S]pecific jurisdiction is tethered to a relationship between the forum and the claim," whereas general jurisdiction is not. *Holland Am. Line, Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 460 (9th Cir. 2007). A defendant with "substantial" or "continuous and systematic" contacts with the forum state is subject to general jurisdiction, and can be haled into court on any action, even one unrelated to its contacts in the state. *Bancroft & Masters*, 223 F.3d at 1086. A defendant not subject to general jurisdiction may be subject to specific jurisdiction if the suit against it arises from its contacts within the forum state. *Id.*

---

[1] Masters asserts Lanham Act claims. The Lanham Act contains no provision addressing personal jurisdiction.

ORDER – 3

When faced with a motion to dismiss for lack of personal jurisdiction, a plaintiff must make a prima facie showing of personal jurisdiction. *Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1128-29 (9th Cir. 2003). A plaintiff must provide evidence that, if believed, would support the court's exercise of jurisdiction. *Id*. at 1129. The court need not accept a plaintiff's bare allegations if the defendant controverts them with evidence. *See AT&T Co. v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996). If both parties provide evidence supporting different versions of a fact, however, the court must resolve competing inferences in a plaintiff's favor. *Harris Rutsky*, 328 F.3d at 1129. If appropriate, the court must grant a party's request for an evidentiary hearing to determine personal jurisdiction. *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1284-85 (9th Cir. 1977). Mr. Valastro has made no such request, and thus the court resolves all competing inferences in favor of Masters.

Masters does not contend that the court has general jurisdiction over Mr. Valastro. It must therefore establish specific jurisdiction. A three-part test applies:

(1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or [a] resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;

2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and

(3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2002) (quoting *Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir. 1987)).

To resolve Mr. Valastro's motion, the court focuses on his activities with respect to the Bakin' With the Boss Tour. All of a defendant's contacts with the forum state, whether lawful or unlawful, are relevant to the court's analysis of personal jurisdiction.

ORDER – 4

*Yahoo! Inc. v. La Ligue Contre Le Racisme*, 433 F.3d 1199, 1207 (9th Cir. 2006). But a single contact or set of contacts can be sufficient to confer jurisdiction. *Id.* at 1210.[2]

### A. Mr. Valastro Purposefully Directed Promotion of the Tour at Washington Residents.

Mr. Valastro attempts to shift attention away from his Tour stop in Seattle by arguing that it will not occur until November. Typically, only a defendant's contacts leading up to litigation are relevant in a personal jurisdiction analysis. *Farmers Ins. Exchange v. Portage La Prairie Mut. Ins. Co.*, 907 F.2d 911, 913 (9th Cir. 1990). In this case, however, it is not Mr. Valastro's upcoming appearance on which the court focuses, but rather on his efforts to promote that appearance and sell tickets via the Tour Website. The Tour Website offered tickets for sale to all tour shows at least as early as June 28, 2010, the date on which Masters filed its opposition to the instant motion. Masters Decl., Exs. C & E. Masters filed its amended complaint on May 21, 2010, and absent evidence from Mr. Valastro to the contrary, the court assumes that the Tour Website was online at that time as well. This is not an unreasonable assumption, given that the first show that the Tour Website promotes was in Pennsylvania on June 23, 2010.[3]

In a purposeful direction in a case like this one, a plaintiff must satisfy three requirements derived from *Calder v. Jones*, 465 U.S. 783 (1984):

---

[2] The parties focus on Mr. Valastro's television appearances in Washington and promotion of those appearances. Between his many appearances on *Cake Boss* and his appearances on nationally syndicated talk shows, Mr. Valastro makes many virtual appearances in Washington every week. Whether these appearances (which are themselves acts of trademark infringement, according to Masters) are sufficient to assert personal jurisdiction over Mr. Valastro is an open question, and one the court need not answer in light of its focus on Mr. Valastro's promotion of his Seattle Tour stop. In the court's view, consideration of Mr. Valastro's television appearances would only strengthen the case for personal jurisdiction over him.

[3] Absent evidence to the contrary, the court must take all inferences in Masters' favor, as the court has already noted. It is reasonable to infer that a website online in June 2010 was online in similar form in May 2010. Even if, however, Mr. Valastro had evidence that the Tour Website did not promote the Seattle Tour stop until June 28, 2010, the effect of that showing would merely be to force Masters to re-file its complaint against him.

ORDER – 5

> The defendant allegedly [must] have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state.

*Yahoo!*, 433 F.3d at 1206 (quoting *Schwarzenegger*, 374 F.3d at 803).

Masters' evidence gives rise to an uncontroverted inference that Mr. Valastro or his designee has intentionally targeted Washington residents for the sale of tickets to his Tour appearance in Seattle in November. As the court has noted, Mr. Valastro provides no evidence regarding the Tour or the Tour Website, other than to note that another entity claims a copyright in the Tour Website and credit for producing the Tour. Mr. Valastro does not, however, contend that he is merely a pawn, appearing in the Tour solely at the bidding of some unnamed master. Mr. Valastro's participation in a Tour (and a Seattle Tour stop) focused entirely on him and his *Cake Boss* persona gives rise to an inference that Mr. Valastro himself has intentionally targeted Washington. Mr. Valastro offers no evidence to the contrary. *See Harris Rutsky*, 328 F.3d at 1129 ("Unless directly contravened, [a plaintiff's] version of the facts is taken as true").

So far as the court is aware, Mr. Valastro's sole means of promoting the Tour in Washington to date has been the Tour Website. The mere existence of a website viewable by residents of the forum state is not sufficient to confer jurisdiction. *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 418 (9th Cir. 1997). Courts require "'something more' to indicate that the defendant purposefully (albeit electronically) directed his activity in a substantial way to the forum state." *Id.* The Tour Website is not a passive website that is merely viewable by Washingtonians, it purposefully targets Washington residents in promoting the upcoming Seattle show. *Millennium Enters., Inc. v. Millennium Music, LP*, 33 F. Supp. 2d 907, 917 (D. Or. 1999) ("It is logical to say that a 'national advertisement' available to all persons with access to the Internet may take on a 'local' characteristic when it expressly solicits local residents") (quoting *Vitullo v.*

ORDER – 6

*Velocity Powerboats, Inc.*, No. 97 C 8745, 1998 U.S. Dist. LEXIS 7120, at *21 (N.D. Ill. Apr. 24, 1998)).

The final requirement of the *Calder* test is a harm that the defendant knows is likely to be suffered in the forum state. As the court discussed in its July 16 order, Mr. Valastro has been aware of Masters and its trademark infringement claims since at least March 2009, when he telephoned Masters representative Kelley Masters in response to an email from her explaining her concerns. By continuing to promote *Cake Boss*, Mr. Valastro knowingly perpetuates the alleged infringement and the harm to Masters. The most obvious locus of that harm is Texas, where Masters resides. But the harm from trademark infringement is not confined to the trademark holder's home, it occurs wherever consumers experience the confusion that is the hallmark of infringement. By promoting a Seattle *Cake-Boss*-themed event, Mr. Valastro knowingly perpetuates that confusion in Washington. A plaintiff need not suffer the "brunt" of the harm from a defendant's actions in the forum state. *Yahoo!*, 433 F.3d at 1207 ("If a jurisdictionally sufficient amount of harm is suffered in the forum state, it does not matter that even more harm might have been suffered in another state."). The court concludes that Mr. Valastro's Washington-directed activities give rise to a jurisdictionally sufficient amount of harm to Masters in Washington.

**B.    Masters Suit Arises from Mr. Valastro's Activities Targeted at Washington Residents.**

Masters' suit arises from Mr. Valastro's purposeful targeting of Washington residents through the Tour Website. In reaching this conclusion, the court does not ignore that Masters' claims are far more concerned with *Cake Boss* than it is with the Tour or any other peripheral conduct. The harm arising from conduct associated with the promotion of the Seattle Tour stop is no doubt less than the harm arising from the nationwide airing and promotion of *Cake Boss*. Not every aspect of a suit must arise from a defendant's forum contacts; it suffices if a part of the injury would not have

ORDER – 7

occurred but for activity in the forum. *Gordy v. Daily News, L.P.*, 95 F.3d 829, 835 (9th Cir. 1996). For example, in *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 773 (1984), a New York resident sued a nationwide publication for libel in New Hampshire because New Hampshire was the only state under whose statute of limitations the suit was timely. Even though it was "undoubtedly true that the bulk of the harm done to petitioner occurred outside New Hampshire," *id.* at 780, the court found the lesser harm arising out of the defendant's New Hampshire activities sufficient for the exercise of personal jurisdiction. Masters could have sued Mr. Valastro solely for his alleged trademark infringement in promoting the Tour and its Seattle stop. This suit thus arises, at least in part, from Mr. Valastro's Washington activities.

## C. Mr. Valastro Has Not Shown That the Court's Exercise of Personal Jurisdiction Is Unreasonable.

The plaintiff bears the burden to satisfy the first two requirements of the specific jurisdiction test; if the plaintiff succeeds, the burden shifts to the defendant to show that the exercise of jurisdiction would be unreasonable. *Bancroft & Masters*, 223 F.3d at 1088. Seven factors are relevant to the reasonableness inquiry, although none is dispositive:

> (1) the extent of the defendants' purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendants' state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

*Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1487-88 (9th Cir. 1993). The defendant must make a "compelling case" of unreasonableness. *Bancroft & Masters*, 223 F.3d at 1088 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985)).

Some of the seven factors do not favor Mr. Valastro. He offers no evidence that litigating in Washington would burden him. There is no suggestion that forcing him to

ORDER – 8

defend in Washington would impinge on New Jersey's sovereignty. It is undoubtedly more efficient to litigate Masters' claims against Mr. Valastro in the same action as its claims against Discovery.[4]

Some factors favor Mr. Valastro. The court has no idea, for example, why Masters, a Texas resident, chose a Washington court, and thus the court cannot connect that choice to Masters' interest in convenient and effective relief. Washington has no more interest than any other state in the bulk of Masters' allegations. Mr. Valastro has targeted Washington with respect to his Seattle Tour stop, but his other allegedly unlawful conduct either does not target Washington or targets it to the same extent it targets every other state.

Considering all of the factors, the court finds that Mr. Valastro has not made a compelling case that this court's exercise of jurisdiction over him would be unreasonable. It is not unreasonable to subject a defendant who profits from nationwide celebrity to suit in a distant forum state, so long as the defendant has targeted the forum state's residents. Mr. Valastro chose Washington as a place to personally appear and promote his *Cake-Boss*-related business activities, and thereby subjected himself to the jurisdiction of Washington's courts.

---

[4] Masters brings a set of trademark claims or claims akin to trademark infringement, along with a claim that Mr. Valastro tortuously interfered with Masters' contractual relationship with a bakeware distributor. A court must have personal jurisdiction over a defendant with respect to all claims. *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1289 n.8 (9th Cir. 1977). The court may, however, in its discretion, exercise "pendent personal jurisdiction over a defendant with respect to a claim for which there is no independent basis of personal jurisdiction so long as it arises out of a common nucleus of operative facts with a claim in the same suit over which the court does have personal jurisdiction." *Action Embroidery Corp. v. Atl. Embroidery, Inc.*, 368 F.3d 1174, 1180 (9th Cir. 2004). To the extent that the court lacks personal jurisdiction over Mr. Valastro with respect to any claim, it finds all of Masters' claims sufficiently related to exercise pendent personal jurisdiction.

ORDER – 9

**D.    The Court Denies Mr. Valastro's Rule 12(b)(6) Motion.**

Separately from his personal jurisdiction arguments, Mr. Valastro invokes Fed. R. Civ. P. 12(b)(6) and argues that Masters' complaint does not state claims against him. The court disagrees.

To prevail in a Rule 12(b)(6) motion, a defendant must show that the plaintiff has failed to state a claim on which the court can grant relief. The court must assume the truth of all the factual allegations of the complaint, and credit all reasonable inferences arising from those allegations. *Sanders v. Brown*, 504 F.3d 903, 910 (9th Cir. 2007). The plaintiff must point to factual allegations that "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 568 (2007). If she does so, her complaint survives dismissal as long as there is "any set of facts consistent with the allegations in the complaint" that would entitle the him to relief. *Id.* at 563; *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950 (2009) ("When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.").

First, Masters has plainly stated a claim based on Mr. Valastro's activities in promoting the Tour, as the court has already discussed.

Second, contrary to Mr. Valastro's contentions, Masters has alleged sufficient facts from which a jury could find Mr. Valastro personally liable for harm arising out of the airing of *Cake Boss*. Mr. Valastro asserts, in essence, that he cannot be personally liable for Discovery's actions. The complaint, however, alleges two facts inconsistent with this assertion. First, it alleges what this court has already noted, Mr. Valastro is not merely a pawn in Discovery's promotion of *Cake Boss*, he is the star of the show. Second, in his capacity as star of the show, Mr. Valastro represented to Masters in March 2009 that he had power to influence Discovery's decisions with respect to the show's

ORDER – 10

name. These allegations are sufficient, at the pleading stage, to state a claim against Mr. Valastro.

Third, Mr. Valastro argues that Masters does not state a tortious interference claim against him. That claim is based on allegations that Mr. Valastro personally contacted a bakeware supplier with whom Masters had contracted and threatened that TLC would take legal action if the supplier did not cease the sale of CakeBoss-branded bakeware. Mr. Valastro suggests that he was acting on TLC's behalf, not his own. Mr. Valastro is free to make that factual argument to a jury. It is insufficient as a basis for a motion to dismiss.

## IV. CONCLUSION

For the reasons previously stated, the court DENIES Mr. Valastro's motion to dismiss.

DATED this 3rd day of September, 2010.

*[signature]*

The Honorable Richard A. Jones
United States District Judge

ORDER – 11